**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**TERRANCE RYAN, individually,**

**Plaintiff,**

**vs.** **Case No. 3:08cv4/MCR**

**WCI COMMUNITIES, INC.,**
**a foreign profit corporation,**
**and**
**CHICAGO TITLE INSURANCE COMPANY,**
**a foreign profit corporation,**

**Defendants.**
**_____________________________________/**

**O R D E R**

In this action plaintiff Terrance Ryan ("Ryan") sues defendant WCI Communities, Inc., ("WCI") for alleged violations of the Interstate Land Sales Full Disclosure Act ("ILSFDA"), 15 U.S.C. § 1701, et seq., and defendant Chicago Title Insurance Company ("Chicago Title") for declaratory relief. WCI has moved to dismiss Ryan's complaint pursuant to Fed.R.Civ.P. 12(b)(6), and Ryan has responded in opposition.[1] For the reasons stated below the court GRANTS WCI's motion.

**Background**

According to Ryan's complaint, on or about May 16, 2005, he and WCI entered into

[1] Amended motion to dismiss at doc. 9; response in opposition at doc. 16. The parties have also filed supplemental authority. Docs. 17, 18.

a purchase agreement pursuant to which WCI agreed to construct, and Ryan agreed to buy, a condominium unit in the Lost Key Golf & Beach Club in Escambia County, Florida. The purchase price of the unit was $620,000. As required by the terms of the agreement Ryan remitted $124,000 in cash to Chicago Title to be held in escrow as earnest money for the purchase.

In a letter dated May 1, 2007, Ryan notified Chicago Title through counsel that he disputed his obligation to purchase the unit and that, under state law, Chicago Title therefore was required to continue to hold his earnest money and not tender it to WCI. The following day, May 2, 2007, Ryan's counsel notified WCI that Ryan intended to cancel the purchase agreement for several reasons, including that the purchase agreement violated the ILSFDA. By letter dated June 4, 2007, counsel informed WCI that its recently announced revisions to the original construction documents were both material and adverse to Ryan and thus constituted additional grounds for cancellation of the purchase agreement. Notwithstanding Ryan's May 1, 2007, letter disputing his obligation to purchase the condominium, Chicago Title released Ryan's deposit to WCI. Presumably, although neither the complaint nor the parties' papers specifically so state, the condominium at issue has been completed but Ryan has not closed escrow on it.

On January 4, 2008, Ryan initiated this action by filing a complaint in which he asserts two claims. In Count I Ryan alleges violations of the ISLFDA by WCI.[2] As relief, Ryan seeks, inter alia, an order rescinding the May 16, 2005, purchase agreement and awarding him damages, interest, and attorneys' fees. In Count II Ryan seeks relief against Chicago Title in the form of a declaratory judgment stating that he is entitled to the return of his $124,000 earnest money deposit.

---

[2] Ryan alleges that the transaction in this case is subject to, and not exempt from, application of the ILSFDA. According to Ryan, the purchase agreement violates the ILSFDA because it fails to inform the purchaser of the right of rescission, to provide for proper notice and opportunity to cure by the purchaser upon default, to file a statement of record and property report, and to stipulate or require the actual completion of certain amenities in the sales agreement.

**Applicable Law**

Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept the material allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. See Sheuer v. Rhodes, 416 U.S. 232, 236 (1974); Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999). To satisfy the pleading requirements of Fed.R.Civ.P. 8, a complaint must simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. See Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. See Swierkiewicz, 534 U.S. at 511 (quoting Scheuer, 416 U.S. at 236); United States v. Baxter Int'l, Inc., 345 F.3d 866, 881 (11th Cir. 2003). Until the recent Supreme Court decision in Bell Atlantic Corp. v. Twombly, 550 U.S. ____, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), courts routinely followed the rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that plaintiff could prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46. Rejecting a literal reading of the "no set of facts" rule, the Court held in Twombly that although a complaint need not plead "detailed factual allegations," in order to survive a motion to dismiss the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 127 S.Ct. at 1964-65. In other words, the complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. The Court further instructed that the "no set of facts" language was "best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969.

The Interstate Land Sales Full Disclosure Act

The ILSFDA was enacted "to protect purchasers from unscrupulous sales of undeveloped home sites, frequently involving out-of-state sales of land purportedly suitable

for development but actually under water or useful only for grazing.” Winter v. Hollingsworth Properties, Inc., 777 F.2d 1444, 1447 (11th Cir. 1985). Section 1703(a) of the ILSFDA makes it unlawful to sell “any lot not exempt under section 1702” unless the seller complies with the provisions of the ILSFDA. The sale of a condominium unit falls within the definition of the sale of a “lot” under the ILSFDA. Id. at 1449. At issue in this case is the exemption under § 1702(a) of transactions that involve “the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years." 15 U.S.C. § 1702(a)(2). Neither § 1701 nor its implementing regulations, 24 C.F.R. § 1710.1 (2007), define the meaning of the term “obligating” contained in § 1702(a)(2). The agency charged with enforcement of the ILSFDA, however, the U.S. Department of Housing and Urban Development (“HUD”), has issued guidelines for interpreting § 1702(a)(2).[3] See Guidelines For Exemptions Available Under the Interstate Land Sales Full Disclosure Act (“Guidelines”), 61 Fed.Reg. 13,596, 13,601 (March 27, 1996). Under the Guidelines, purchase agreements generally are not exempt under § 1702(a)(2) if they “allow nonperformance by the seller [of the two-year construction completion obligation] at the seller's discretion.” Guidelines, § IV(b).

Federal law governs the interpretation of federal statutes such as the ILSFDA, see Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 97, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991); In re Prudential of Fla. Leasing, Inc., 478 F.3d 1291, 1298 (11th Cir. 2007), but courts must apply state contract law to determine whether a seller is “obligated” to complete construction within two years. See Markowitz v. Northeast Land Co., 906 F.2d 100, 105 (3d Cir. 1990) (applying Pennsylvania law); Rondini v. Evernia Properties, LLLP, 2008 WL 793512, *2 (S.D.Fla. 2008) (applying Florida law); Fortunato v. Windjammer Homebuilders, Inc., 2006 WL 208777, *3 (M.D.Fla. 2006) (same). In Samara Dev. Corp. v. Marlow, 556 So.2d 1097, 1100 (Fla. 1990), the Florida Supreme Court held that in order to maintain the § 1702(a)(2) exemption a purchase agreement must contain both an unconditional obligation to complete construction within two years and no limitation on the

---

[3] As interpretive rules rather than substantive regulations, the Guidelines are entitled to some deference by courts. Reno v. Koray, 515 U.S. 50, 59, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995).

remedies available to the buyer in the event of breach. Some federal courts have followed Samara. See Aboujaoude v. Poinciana Dev. Co. II, 509 F.Supp.2d 1266, 1271 (S.D.Fla. 2007) (citing Samara in finding that in order to qualify for exemption under § 1702(a)(2) seller must make unconditional promise to complete construction within two years), and Fortunato, 2006 WL 208777, *3 (construing ILSFDA exemptions narrowly and finding that § 1702(a)(2) exemption was inapplicable where contract lacked unwavering obligation to construct within two years). Other federal courts, however, have declined to do so. See Stein v. Paradigm Mirsol, LLC, 2008 WL 344492, *4 (M.D.Fla. 2008) (rejecting argument that any condition on performance whatsoever renders an agreement illusory because Samara apparently was influenced by Guidelines yet failed to note provision therein allowing exceptions); Harvey, 2008 WL 1843909, * 6-7 (quoting and apparently agreeing with Stein). As a consumer protection statute the ILSFDA should be liberally construed in favor of the public. Pugliese v. Pukka Development, Inc., 524 F.Supp.2d 1370, 1373 (S.D. Fla. 2007) (citing Samara, 556 So.2d at 1100). Similarly, under both federal law and state law, exemptions under the ILSFDA must be narrowly and strictly construed. Markowitz, 906 F.2d at 105; Samara, 556 So.2d at 1100.

**Discussion**

At the center of the parties' dispute in this case are two provisions in the May 16, 2005, purchase agreement, Section 3(D) and Section 7(D):

Section 3 is entitled Closing and Possession Date. Subsection (D) provides:

> The Unit, as configured in Seller's Plans and Specifications for the Unit and the building in which the Unit is located shall be completed not later than two (2) years from the date Purchaser signs this Contract. However, the date for completion may be extended by reason of delay incurred by circumstances beyond Seller's control, such as acts of God or any other grounds cognizable in Florida contract law. It is the intention of the parties that this sale qualify for the exemption provided by 15 U.S.C. Section 1702(a)(2), and nothing contained in this Residence Purchase Contract shall be construed or operate so as to any obligations of Seller or rights of Purchaser in a manner which would render said exemption inapplicable.

Doc. 1, Exh. A, Sec. 3(D).

Section 7 is entitled Default and Remedies. Subsection (C) provides:

> If Seller defaults in the performance of this Contract, Purchaser will give Seller twenty (20) days' notice of default, and if Seller has not cured within such period, then nothing contained herein shall be deemed to restrict Purchaser's remedies, if Purchaser shall be entitled to such remedies under applicable law, including the right to seek specific performance.

Id. at Sec. 7(C).

WCI argues that Ryan's claim against it must be dismissed because Section 3(D) requires unconditionally that construction be completed within two years of the date of the contract and thus, under § 1702(a)(2) of the ILSFDA, the transaction is exempt from the statute's requirements. Moreover, WCI argues, the agreement's "savings clause," which is found in the final sentence of Section 3(D), trumps any other provision in Sections 3(D) or 7(C) that might permit the two-year statutory period to be exceeded.[4] WCI also contends that, regardless of the savings provision, the sales transaction is exempt because in addition to the express guarantee to complete construction within two years the buyer's right to affirm the contract and seek damages or specific performance is not limited. In opposition to WCI's motion, Ryan submits that the ILSFDA is applicable to the sales agreement because the two-year completion obligation is illusory, having been rendered unacceptably conditional by Section 7(C)'s default provision. Given that the obligation is not unconditional, Ryan further argues, regardless of whether the purchase agreement does not limit the buyer's right to seek damages or specific performance, WCI cannot show that the sales transaction is exempt under § 1702(a). Additionally, Ryan contends that a savings clause may not be used to cure impermissible contract provisions, particularly those involving a consumer protection statute such as the ILSFDA.

As noted above, this court must apply federal law in interpreting the ILSFDA, although it must consult state contract law in evaluating the agreement at issue to determine whether it obligates the seller to complete construction within two years. The court first notes that it agrees with those cases which conclude that, while the two-year construction completion obligation must be real and not illusory in order to maintain

---

[4] In support of its contention that the transaction in this case is exempt from the requirements of the ILSFDA, WCI also points to the HUD Guidelines.

exemption from the ILSFDA, it is not necessary that the contract be absolutely unconditional. See Harvey v. Lake Buena Vista Resort, LLC, 2008 WL 1843909, *7 (M.D.Fla. 2008); Stein, 2008 WL 344492, *4. See also Atteberry v. Maumelle Co., 60 F.3d 415, 420 (8th Cir. 1995) (stating that "[i]t is immediately apparent that while these guidelines say that the seller's obligation to build must be specific, they do not say, or even hint, that the obligation must be unconditional. Neither, of course, does the statute."). Conditions or exceptions that do not so undermine the two-year construction obligation as to make it illusory are permissible.[5]

Section 7(C) of the purchase agreement in this case imposes the condition that in the event of the seller's default the buyer must grant the seller a cure period of twenty days. Under Ryan's reading of this provision, Section 3(D)'s two-year construction obligation is unduly conditional, and thus illusory, because if default under Section 7(C) occurs at any time within twenty days of the final construction date the two-year construction period could be exceeded. The court disagrees with this interpretation.

First, the court does not – as the parties apparently do – read the last sentence of Section 3(D) as a "savings clause" or cure that may be used in an attempt to rescue the exemption when it otherwise would be lost due to an impermissible contractual provision.[6] Rather, the court considers this clause to be simply a statement of the parties' clear intent

---

[5] Section 3(D) of the purchase agreement in this case in part provides that "the date for completion may be extended by reason of delay incurred by circumstances beyond Seller's control, such as acts of God or any other grounds cognizable in Florida contract law." Ryan does not assert that any of these reasons for extension render the two-year construction completion obligation illusory (although WCI briefly mentions the act of God provision). As Ryan has waived the argument by failing to raise it, the court need not address it.

The court nevertheless notes that several federal courts that have considered the issue of force majeure clauses have concluded such provisions do not render a transaction ineligible for the exemption. Harvey, 2008 WL 1843909, *8; Stein, 2008 WL 344492, *5; Rondini, 2008 WL 793512, *2-3. Moreover, even if Ryan had challenged this or other provisions in the May 16, 2005, purchase agreement that allow for some delays, the court likely would have concluded that the provisions did not preclude application of the § 1702(a)(2) exemption. See Rondini, 2008 WL 793512, *2-3 (holding that seller's obligation was not illusory where purchase agreement permitted extensions for "delays caused by Acts of God, the unavailability of materials, strikes, other labor problems, governmental orders or other events which would support a defense based upon impossibility of performance for reasons beyond [defendant's] control.").

[6] In Harvey v. Lake Buena Vista Resort, LLC, 2008 WL 1843909 (M.D.Fla. April 22, 2008), and a prior decision in the same case which was vacated shortly after being entered, Harvey v. Lake Buena Vista Resort, LLC, 2008 WL 254131 (M.D.Fla. January 29, 2008) (vacated February 14, 2008), the identical language was described, perhaps for lack of a better term, as a "savings clause."

that the transaction should qualify for the § 1702(a)(2) exemption and that no other provision of the agreement should be read in a manner inconsistent with that intent which would make the exemption unavailable. See Sugar Cane Growers Coop. of Fla. v. Pinnock, 735 So.2d 530, 534 (Fla. 4th DCA 1999) (stating that contracts should be reviewed as a whole and all language given effect; where the language is clear and unambiguous, the contract should be enforced as it reads); City of Homestead v. Johnson, 760 So.2d 80, 84 (Fla. 2000) (noting the "rule of construction requiring courts to read provisions of a contract harmoniously in order to give effect to all portions thereof."). Moreover, in construing a contract the court must to look to the entire document, give effect to every provision, and reconcile apparent inconsistencies if possible. Treasure Salvors, Inc. v. Tilley, 534 So.2d 834, 836 (Fla. 2d DCA 1988); 11 Fla. Jur.2d, Contracts § 121, at 421 (stating that "all of the provisions of a contract should be given their due meaning, and should be so construed as to render them consistent and harmonious if possible; effect should be given to each provision if that can reasonably be done."); DHSH Corp. v. Affordable Enterprises Exchange, Inc., 734 So2d 567, 569 (Fla. 4th DCA 1999) (stating that "[i]f clauses in a contract appear to be repugnant to each other, they must be given such an interpretation and construction as will reconcile them if possible."). So reading the purchase agreement in this case, the court finds that Section 7(C)'s reference to default by the seller in the performance of the contract does not contemplate requiring the buyer to provide the seller with the opportunity to attempt to effect a cure should a default occur within twenty days of the two-year completion deadline where such cure period would cause the deadline to be exceeded.[7] The court therefore concludes that Section 3(D) and Section 7(C) may be read together in a fashion that neither ignores nor renders meaningless either provision but rather gives effect to each while reconciling any apparent inconsistencies between the stated intention to maintain the § 1702(a)(2) exemption and the requirement of granting a twenty-day cure period to the seller in the event of a default.

Alternatively, assuming that Section 3(D) and Section 7(C) cannot be reconciled,

---

[7] Moreover, Section 7(C) imposes no restrictions on the buyer's remedies in the event of default, including the right to seek specific performance.

the court is guided by the well-established principle that a "specific provision dealing with a particular subject will control over a different provision dealing only generally with that same subject." Kel Homes, LLC v. Burris, 933 So.2d 699, 703 (Fla. 2d DCA 2006). The final sentence of Section 3(D), which describes the parties' intent to comply with § 1702(a)(2) and states that "nothing" contained in the purchase agreement should be understood or operate to render the exemption inapplicable, deals specifically and clearly with the issue of the §1702(a)(2) exemption. Section 7(C) implicates §1702(a)(2) but only in a general way; it does not specifically address the ILSFDA or compliance with §1702(a)(2).[8] Assuming an irreconcilable conflict exists between Section 3(D) and 7(C), the court is of the opinion that the last sentence of Section 3(D) should be read to control with respect to the exemption under §1702(a)(2), effectively trumping any conflict with Section 7(C).

The court recognizes that, when confronted with language that may be read as imposing conditions on the two-year construction obligation, other courts have determined that those conditions stripped the transaction of eligibility for a § 1702(a)(2) exemption. See Markowitz, 906 F.2d at 106; Fortunato, 2006 WL 208777, *3; Samara, 556 So.2d at 1099-1100. None of those courts, however, dealt with an agreement containing the sort of language that is present in the last sentence of Section 3(D) which announces the parties' clear intention to adhere to the requirements of § 1702(a)(2).

For the foregoing reasons, the court finds that the purchase agreement's two-year completion obligation is not illusory and, consequently, that the transaction is eligible for the § 1702(a)(2) exemption. Because the ILSFDA does not apply to the purchase agreement, WCI's motion to dismiss the action with prejudice as to it therefore is granted. Additionally, because no substantive cause of action remains as to which declaratory relief can be granted, the action is also dismissed as to Chicago Trust. As a final matter, as WCI submits, Section 27(F) of the purchase agreement provides that in connection with

---

[8] On the other hand, while Section 7(C) deals particularly with default, and the remedies available in the event of default, Section 3(D) does not deal with default even as a general matter as it neither implicates nor expressly mentions it. The canon of construction just identified therefore does not apply.

litigation the prevailing party may recover fees and costs. WCI is the prevailing party in this case and thus is entitled to recover its attorneys' fees from Ryan. Costs shall also be assessed. WCI willl have fourteen days in which to file the appropriate supporting documentation. See N.D.Fla.Loc.R. 54.1.

Accordingly, it is ORDERED:

1. WCI's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) (doc. 9) is GRANTED. Dismissal shall be with prejudice.

2. WCI's motion for attorney's fees is also GRANTED. WCI will have fourteen days in which to file the appropriate supporting documentation.

DONE and ORDERED this 23rd day of June, 2008.

s/ *M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**